**LIST & CLARK CONSTRUCTION COM-PANY, Appellant,**

v.

**Perry McGLONE, d/b/a McGlone Construction Company, and Avery Beck, Respondents.**

No. 22350.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1956.

Dean Arnold, Beeson & Dabbs, Kansas City, for appellant.

Clifford B. Kimberly, Kansas City, for respondent Perry McGlone.

W. A. Franken, John Franken, Scott R. Timmons, Carrollton, for respondent Avery Beck.

FRED H. MAUGHMER, Special Judge.

This is an action under an express and implied indemnity. The original contractor sued its sub-contractor, who, in turn, joined his sub-contractor as a third-party defendant. The first contractor expended money for attorney fees and trial expense in the defense of its principal in a suit for damages, brought against the principal and the last sub-contractor, Recovery of the attorney fees and trial expense is the objective in this suit. Jury trial was waived. The trial court found generally for both defendants and against plaintiff under Count I of the petition and entered judgment accordingly. The trial court found in favor of defendant Avery Beck under Count II, and in favor of the third-party defendant Avery Beck on his counterclaim, and against the third-party plaintiff Perry McGlone, doing business as McGlone Construction Company, and in the sum of $1,491.15. All issues presented below were finally determined in the trial court. An appeal was perfected by the plaintiff List and Clark, but only as to the judgment entered under Count I. That judgment as to Count I is all that is involved in this appeal. This appeal was first presented to this Court at the February 1956 Term, but a Motion for rehearing was sustained. It is therefore presented again.

On January 6, 1950, plaintiff, List & Clark Construction Company, entered into a prime contract with Chicago, Burlington and Quincy Railroad Company for the construction of a section of railroad line in Carroll County, Missouri, which was for the use and benefit of the Kansas City and Brookfield Railroad Company, Burlington's wholly owned subsidiary. List and Clark sub-contracted the "clearing and grading" in Carroll County to the defendant Perry McGlone who, in turn, sub-contracted to

defendant Avery Beck. The first contract contained this provision:

"The contractor shall also protect, indemnify, and save harmless the railroad company from all loss or damage, attorney's fees, costs, expenses, suits, causes of action and demands of whatsoever nature, on account of injury to or death of the person or loss or damage to the property of the railroad company, its agents or employees, or others, arising from or growing out of, in whole or in part, the prosecution of the work which said damages may be estimated and reserved or deducted by the engineer, as provided in Paragraph 7 and 8 hereof."

Each sub-contract carried the following clause:

"Except as modified or otherwise provided in this sub-contract and except as obviously inapplicable the mutual rights and obligations of the parties hereto shall be those set forth in said contract between 'Contractor' and the Railroad Company, substituting therein 'Sub-Contractor' for 'Contractor' and 'Contractor' for 'Railroad Company.'"

On January 30, 1952, Lawrence L. and Louise Hawkins, owners of a farm through which the railroad line was to run, sued the Kansas City and Brookfield Railroad Company and defendant Avery Beck in the Circuit Court of Carroll County. Their petition alleged that Beck "wilfully and intentionally trespassed upon the Hawkins' pasture, cut trees, and damaged fences," and "for a period of six weeks refused to restore said fences and refused to fence said right-of-way." The prayer was for $1500 actual and $1500 punitive damages. Trial of this case resulted in a jury verdict and a final judgment for both Beck and the Kansas City and Brookfield Railroad Company. When the suit was filed the railroad company instructed its local attorneys, Franken and Franken, Carrollton, Missou-

ri, to file answer. They did so. The defendant Avery Beck also employed Franken and Franken as his attorneys and they filed answer for him.

On February 21, 1952, John R. Minton, as claim agent for the Burlington, sent a letter to List and Clark. Therein he enclosed copy of the Hawkins' petition, and quoted from the company's contract with List and Clark which provided: "You shall protect, indemnify, and save harmless the railroad Company from all loss or damage." This letter further declared: "It becomes your duty under the contract to take over, defend, and hold the railroad company harmless in this case, and I shall be glad to know if you will do so."

On April 5, 1952, Beeson and Dabbs, Kansas City, Missouri, as attorneys for List and Clark, by letter to McGlone and to Beck, demanded: "That you and each of you take over the defense of the above cause and that you hold our client harmless from all amounts which may hereafter be expended."

Under date of April 15, 1952, Beeson and Dabbs in a letter to the Burlington Railroad, notified them that Beeson and Dabbs, as attorneys for List & Clark Construction Company and its surety, Central Surety Insurance Corporation, were assuming the defense of the Hawkins' suit on behalf of the railroad. On April 19, 1952, by letter to W. A. Franken, attorney for Avery Beck, Beeson and Dabbs said, "In view of the fact that we intend to assert all our contractual rights against our sub-contractor Perry McGlone and against Avery Beck, as the sub-contractor of Perry McGlone, it appears that *there may be a conflict of interests between the two defendants*. In view of the above we have retained Christian Stipp as local counsel and he and we will enter our appearance as attorneys for the railroad. However, there is no conflict as to the plaintiff's measure of damages and we hope to cooperate with you in every extent possible in the trial of the issues against the plaintiff."

It appears from the admissions of counsel (Mr. Franken and Mr. Arnold of Beeson and Dabbs) that after April 15, 1952, the date of the letter to the railroad, the defense of the railroad was taken over by Beeson and Dabbs and Graham and Stipp, their local counsel. Franken and Franken defended Beck. The verdict and judgment was for both defendants. It was stipulated that attorney fees and expenses incurred by Beeson and Dabbs and Graham and Stipp in defending the railroad amounted to $731.01; that this sum was paid to the attorneys by List and Clark, which was immediately reimbursed by Central Surety.

It is evident that the facts were stipulated and are not in dispute. The sole question seems to be: Is List and Clark, prime contractor, entitled to recover from either or both of the sub-contractors for attorney fees and trial expenses paid by it, for which it was reimbursed by its insurer, in defense of a suit for damages brought by an outsider against its principal and the last sub-contractor?

■ Respondent Beck contends that since the expenses were actually paid by Central Surety, recovery thereof cannot be had by or in the name of List and Clark. True, List and Clark carried insurance, but plaintiff's insurer was subrogated to all rights of plaintiff. This point is ruled against the respondent. Busch and Latta Paint Company v. Woermann Construction Company, 310 Mo. 419, 276 S.W. 614.

■ Appellant, List and Clark, on appeal contends that Beck alone was the actor charged with negligence in the Hawkins' petition. The petition as filed charged trespass, cutting of trees, removal of fences and refusal to repair or replace the fences for six weeks. In the letter of April 19, 1952, counsel for appellant said: "It appears that there may be a conflict of interests between the two defendants." This possible conflict must have been on whether plaintiff's damages were occasioned by Beck's trespass and cutting of

trees and fences or by the failure of the railroad to repair the fence or fence the right-of-way, as required by Section 389.-650 RSMo 1949, V.A.M.S., the Missouri law. However, the petition generally charged Beck as the actor and agent, for whose negligence the railroad was also liable. Under the petition the railroad's duty to re-fence could not arise until Beck had cut and removed the fence. The indemnity contract here covered damages "growing out of the prosecution of the work." An indemnitee may lawfully contract with an indemnitor to save him harmless as to third persons, even though the loss sustained is the result of the indemnitee's own negligence. See Terminal R. Ass'n of St. Louis v. Ralston-Purina Company, 352 Mo. 1013, 180 S.W.2d 693. It seems that if any recovery was had by Hawkins, Beck would have been liable, as the only tortfeasor, or as joint tort-feasor, and certainly would have been liable as the indemnitor.

Appellant insists that the petition both in its conclusions and the factual allegations only charged negligence against Beck, for which the railroad was also liable. We agree with the appellant in this contention, except on the failure to fence the right-of-way charge for which the railroad might also be directly negligent. But if this is true, then Hawkins must recover against Beck, else no liability can arise, even secondarily, against the railroad, and, further, if this is true, then Beck by defending himself was defending the railroad and the other contractors. An answer had been filed for the railroad, so there could have been no default judgment. In Hunter v. DeLuxe Drive-In Theaters, 257 S.W.2d 255, loc. cit. 259, this Court approved the following language from City of Springfield v. Clement, 205 Mo.App. 114, 225 S.W. 120:

"'The right to indemnity in such cases stands upon the principle that everyone is responsible for the consequences of his negligence; and if an-

other person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him'. * * * 'Whenever several parties are liable to the same obligation, but by the contract from which the liability arises or by the relations between them the primary duty of discharging the obligation rests upon one or more of the number, and the liability of the others is only secondary, if those secondarily liable are compelled to discharge the obligation, they have a right to reimbursement from those primarily liable for the loss which they have incurred. This right may arise from an express contract of indemnity.'"

Based upon the verdict and final judgment in the Hawkins' case, neither Beck nor the railroad was guilty of any negligence for which they were responsible in damages. Beck defended against the negligence charge leveled against him. Presumably he incurred attorney fees and trial expense. Three parties other than Beck had a possible financial liability, in the outcome of the Hawkins' suit, that is, the railroad, List & Clark, and Perry McGlone. Suppose all three or their insurers had determined it was unwise to rest their fate or possible liability (1) Upon Beck's defense or (2) Upon their indemnity contract; and all three had employed counsel and incurred trial expense? Would Beck, who was found guilty of no negligence for which he was responsible in damages, be required to reimburse all three? If he had refused and failed to defend the suit, we think so. Since he did defend, we think not. If List & Clark or its insurer, Central Surety, thought it wise, and might possibly lessen its danger of liability, to put its own attorneys into the case and make its own pre-trial investigation, rather than to rely on Beck's defense and Beck's liability if he lost, then it had the right to do so. But insofar as the attorneys' fees and trial costs are concerned, at its own and not Beck's expense.

The Hawkins' suit was founded in part upon the sole negligence of Beck, and in part upon his joint negligence with the railroad. If Hawkins prevailed then Beck was personally liable. If he did not pay and the railroad did pay, then under the indemnity contracts the railroad could recoup from List & Clark. It in turn from McGlone, and he finally from Beck. By any route, liability finally came to rest on Beck. Legally, Beck was liable for any damages third parties might sustain by reason of his negligence. Likewise, he with the railroad was responsible for any damages occasioned by the negligence of him and the railroad. In addition, by his contract he agreed to "protect, indemnify and save harmless" the railroad company and other contractors from "any loss or damage to the property of others, arising from or growing out of, in whole or in part, the prosecution of the work." Beck never denied his responsibility. He promptly employed counsel and successfully resisted the claim. His contract and equity, we think, required him to employ counsel, investigate and defend the claim, but neither his contract nor equity required him to pay List and Clark or its insurer's attorneys, or investigators, to help it do it.

Appellant has cited many cases which it says entitles it to recover, viz.: Terminal R. Ass'n v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693, in which a switching crew foreman was killed; judgment was secured against the indemnitee and the Court held Ralston-Purina liable under the indemnity contract. In Busch and Latta Paint Company v. Woermann Construction Company, 310 Mo. 419, 276 S.W. 614, two workmen were injured when scaffolding broke. A judgment was secured in a suit against the indemnitee alone. Recovery was allowed against indemnitor or the sub-contractor.

In State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481, Algiere's truck driver, hauling freight for Byers, injured a school bus driver, who sued Byers alone.

The Court approved bringing Algiere in as a third-party defendant.

Appellant cites no case and we have found none where attorney fees and trial expense were recovered by an indemnitee from an indemnitor, when no liability was established or judgment secured against either indemnitor or indemnitee, and when the indemnitor not only did not refuse to defend, but on the contrary did defend the suit successfully. In 42 C.J.S., Indemnity, § 17, p. 593, this statement is made:

"An indemnitee has no right to insist on being saved harmless or protected in any particular manner, and the undertaking of the indemnitor is fulfilled by any course on his part which actually saves harmless and protects the indemnitee."

The judgment is affirmed.

DEW, P. J., and CAVE, J., concur.