O. B. AVERY, Appellant, v. AMERICAN AUTOMOBILE INSURANCE COMPANY, a Corporation, and AMERICAN AUTOMOBILE FIRE INSURANCE COMPANY, a Corporation.—No. 38098.—166 S. W. (2d) 471.

Division One, November 10, 1942.

Rehearing Denied, December 1, 1942.

*Clark M. Clifford, Clem F. Storckman* and *Lashly, Lashly, Miller & Clifford* for appellant.

396

398

*Moser, Marsalek & Dearing* for respondents.

BRADLEY, C.—Action on a policy of liability insurance to recover $11,000. The cause was tried before the court without a jury; finding and judgment went for defendants and plaintiff appealed. There was a provision in the policy that it would cease to cover during any period covered by *other insurance,* and it was on the *other insurance* provision that the finding below is based.

April 12, 1929, plaintiff, under the name of O. B. Avery Company, was engaged in the business of leasing construction machinery and equipment to contractors. The machinery consisted of cranes, concrete mixers, pumps, etc. On the date mentioned plaintiff took out a policy for one year with the Hartford Accident and Indemnity Company

by which said company agreed "to indemnify the assured . . . against loss by reason of the liability imposed by law upon the assured for damage on account of bodily injuries including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered as the result of an accident, occurring within the period of the policy, by any person or persons, not employed by the assured, *and caused by equipment rented or leased by the assured to contractors during the policy period,* whether the equipment may be delivered by the assured or the contractor, coverage to apply from the time the equipment shall leave the premises of the assured until it shall be returned, except such loss from claims arising from bodily injuries or death caused by any person employed by the assured contrary to law, or under fourteen (14) years of age" (italics ours).

The Hartford further agreed "to investigate cases of bodily injuries or death covered by this policy, to negotiate for the settlement of claims made on account of such cases of bodily injuries or death, and to defend suits, even if groundless, brought on account of such cases of bodily injuries or death, unless or until the company shall elect to effect settlement thereof; to pay, in addition to damages, all expenses incurred by the company for investigation, negotiation, or defense; all costs taxed against the assured in any legal proceeding defended by the company; interest accruing after entry of judgment upon such part of same as is not in excess of the company's limit of liability."

January 2, 1930, while the Hartford policy was in force, plaintiff took out a combination policy in the American Automobile Insurance Company and the American Automobile Fire Insurance Company, respondents here. We might state that plaintiff does not now claim right of recovery against the American Automobile Fire Insurance Company, hence the term American hereinafter has reference to the defendant American Automobile Insurance Company.

The policy in the American, the one in suit here, as stated, was issued January 2, 1930, and was for one year, and plaintiff was insured within the limits of the policy "against direct loss or expense arising or resulting from claims upon the assured for damages by reason" of the ownership, maintenance and use of a Leudinghaus truck, and the *use* of the truck included its "loading and unloading."

The American policy further agreed "to pay all costs taxed against the assured in any legal proceeding against the assured arising out of an accident covered by this policy and which is defended by the company in accordance with the foregoing agreement; and to pay interest accruing upon that part of any judgment rendered in connection therewith which is not in excess of the policy limit."

The American policy further provided that "if the assured carries the policy of another insurer" which "includes *directly or indirectly* insurance against loss or expense *caused by or arising out of the load-*

*ing or unloading of any automobile insured hereunder* or caused by any movement of such automobile in connection with such loading or unloading, then this policy shall, during the period covered by such other insurance, entirely cease to cover against any and all such loss or expense'' (italics ours).

May 5, 1930, plaintiff leased a pump, weighing 350 or 400 pounds, to the Hogan Construction Company, which company was working on a sewer in Forest Park, St. Louis. The pump was loaded by plaintiff on the Leudinghaus truck, covered by the American policy, and transported to Forest Park. Plaintiff's mechanic, Shanfelt, accompanied the truck driver, Jones. Plaintiff did not send skids with which to unload the pump, and the Hogan employees improvised skids from some lumber conveniently by. While the pump, under which were four low wheels, was being rolled down the skids from the rear of the truck, it fell from the skids and seriously injured Thomas B. Walsh, foreman of the Hogan Company. Shanfelt and Jones did not consider that their employer, plaintiff, was responsible for Walsh's injury, and did not report such to plaintiff, and the first time that he knew about Walsh's injury was in August, 1931, when he was sued by Walsh to recover $25,000 for the injuries sustained.

Plaintiff sent the petition and summons served upon him to the Hartford, and it was referred to their attorney. An investigation was immediately made, and the Hartford denied liability on the ground that its policy had expired when Walsh was injured, and sent the petition and summons to the American. The American denied liability and sent the petition and summons back to the Hartford. The Hartford again sent them to the American, and the American sent them back to plaintiff. In the situation, plaintiff employed counsel and looked after the defense of the Walsh case, which was finally settled for $10,000 without trial, and plaintiff, on October 24, 1933, gave his check for that sum to Walsh and his attorneys; paid his (plaintiff's) attorneys' fee of $500, and paid the costs amounting to $90.45.

October 21, 1933, three days before plaintiff paid in the Walsh case, he and the Hartford entered into an agreement by which said company loaned plaintiff $10,000, ''and a sum sufficient to pay all costs and expenses incurred'' in the Walsh case. The loan was conditioned upon plaintiff pursuing ''his action on his contract of insurance against'' the American. The agreement went on to provide that plaintiff's liability on the loan ''was limited to whatever amount'' he recovered from the American in the present cause, and that in the event plaintiff was ''unsuccessful in his action against'' the American, then plaintiff's obligation to repay the loan was ''null and void'' and plaintiff would ''owe nothing'' to the Hartford. Also, it was provided in the loan agreement that the Hartford did not, by such agreement, admit that its policy was in force when Walsh was injured or that it covered his injury.

As stated, supra, the Hartford policy was issued April 12, 1929, for one year, and Walsh was injured May 5, 1930. When the Hartford and the American were passing between them the petition and summons served on plaintiff in the Walsh case the Hartford's claim of nonliability was on the theory, as stated, that their policy had expired, but that claim was abandoned because of two binders issued which kept the policy in force until May 12, 1930.

The only question here is whether or not the Hartford policy was *other insurance,* that is, whether that policy insured plaintiff against liability for the Walsh injury. Plaintiff contends that said policy did not so insure him, and the American contends that it did. It is conceded that if the Hartford policy did so insure plaintiff, then he cannot recover against the American. Plaintiff in the brief says: "The Hartford policy, by its terms, neither directly nor indirectly even purports to insure against loss 'arising out of the loading or unloading' of the Leudinghaus truck, which is the subject matter of the policy sued on here. No mention is made in the Hartford policy about loss arising from the 'loading or unloading' of Leudinghaus truck or any other truck or automobile. On the contrary, the Hartford policy only undertakes to insure against loss 'caused by equipment rented or leased' by the assured." The trial court found that the injury to Walsh was "caused by said piece of equipment (the pump) rented or leased by the plaintiff to said contractor, within the meaning of the policy issued by the Hartford Accident & Indemnity Company to the plaintiff." That is, the trial court found as stated, supra, that plaintiff had *other insurance.*

As appears, supra, the Hartford policy insured plaintiff against liability for injury to any person, not employed by plaintiff, and *caused by equipment rented or leased to contractors,* etc. Plaintiff contends that the injury to Walsh was not *caused* by the pump within the meaning of the term *caused* in the Hartford policy. In explanation as to how he was injured Walsh testified that Hogan, his employer, told him to take some men and "help unload the pump from the truck"; that the men took six planks 18 to 22 feet in length, "three planks on each side, one straddling the other two;" that the two men on the truck "held the tongue attached to the pump to let it down slow; it rolled down on its own wheels"; that Shanfelt (plaintiff's mechanic) told him "to watch the wheels on one side and said he would watch the wheels on the other. I was bending over. They were letting it come down gradually and finally it dumped on top of my back. When the pump fell over the whole pump was off the truck and on the planks. The tongue was being held by the men in the truck. The planks were 2" x 10". None of the wheels of the pump ran off the planks that I know of. The planks bent a little bit, not much. Shanfelt said he tried to straighten a plank on his side or do something with it. That is the only thing I know, and it threw

all of the weight on this side and turned it over. It did not run off.''

Shanfelt testified that the planks used for skids were 2 inches thick, 8, 10 or 12 inches in width, and 14 to 16 feet in length; that when they started ''to lower the pump over the skids,'' he got hold of the pump on the opposite side from Walsh ''to steer it down on the skids and keep it from running too fast; I think there were two men on my side, besides myself. There were more than two men on Walsh's side. We started letting the pump down the skids slowly. The pump was being moved off the truck with its back end first. The men were holding it back with their hands. The rear end of the pump was about halfway down the skids when the pump slipped toward Walsh's side. It slipped off the skids on Walsh's side, and turned over sideways.''

Shanfelt further testified that when the pump turned over, Walsh ''was holding on the rear end of the pump''; that ''at the time it slipped off'' Walsh was trying to hold it steady on the skids and it caught him; that at that time Walsh ''was in a stooping position''; that ''when the thing started slipping it was the weight of the pump that caused him to get in that position; he was unable to hold it alone''; that ''the blockings, when the pump fell, turned the skid over and turned the blockings over. The blocking went down; I think it collapsed; more or less dismantled when the skid turned over on it. The skid sagged some on Walsh's side. I mean by that that it sort of gave under the weight. A sagging of the skid on his side would cause this pump to slide in that direction. . . . When got down about half way one of the planks sagged and then it tipped over.''

Plaintiff argues that the Hartford policy covered injuries resulting only from defects in the leased equipment, in this case, the pump, and that the *proximate cause* of the pump's fall and Walsh's injury was not any defect in the pump, but was the sagging of the skids, and that therefore, Walsh's injury was not *caused* by the rented or leased pump. The term *proximate cause* is generally concerned in negligence cases and it must be conceded that a defective skid was, at least, a proximate cause of the pump's fall, Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S. W. 475, l. c. 481, and cases there cited; Evans v. Massman Construction Co., 343 Mo. 632, 122 S. W. (2d) 924, l. c. 932; Hills v. Home Owners' Loan Corp. et al., 348 Mo. 601, 154 S. W. (2d) l. c. 763, but we cannot agree with plaintiff on the construction of the Hartford policy.

Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S. W. 330, was an action on a liability policy. The plaintiff's building in St. Louis had two elevators operated in a shaft from the 1st to the 7th floor; the south elevator got out of order and Dolph got one Flori, a mechanic, to repair it. The north elevator was functioning, and Flori gave direction not to move it above the 6th floor. While at the bottom

of the shaft making examination, the north elevator, contrary to Flori's direction, was moved to the 7th floor causing its counterweight to descend and injure Flori, who brought suit against Dolph and recovered a judgment for $12,500. See Flori v. Dolph (Mo. Sup.), 192 S. W. 949. Dolph paid the judgment and brought suit against the Maryland Casualty Company claiming that the policy he had in said company covered the injury to Flori, which claim the company denied.

The policy insured Dolph "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any person or persons while in, or entering, or leaving the car of any elevator or hoist described in the schedule below, or by reason of the existence of the well, shaft or hoistway of the said elevator or hoist, or the appliances, attachments, or appurtenances contained therein, or the machinery directly connected therewith."

The defense was that Flori's injury was caused solely by the negligence of the operator on the north elevator, and was not caused by anything insured against in the policy. In ruling the case the court said [261 S. W. l. c. 333]:

"If we understand appellant's argument it is that the expression 'by reason of' means such shaft or appliances must have been the proximate cause of the injury. Those words must be interpreted in the light of the purpose of the contract, and the particular liability against which Dolph was insured. The insurer undertook to protect him against liability which he would incur on account of injury to some one else. He could not incur liability to another unless there should be an injury caused by some negligence. The negligent *act* of Dolph, or some one acting for him, must be the cause and the only cause of injury or liability which he was insured against. The mention of shaft, appliance, and machinery does not imply that they could cause the injury, independent of some negligent act. That is a stipulation describing the condition under which or by means of which the negligent act could take place." It was held that the policy covered Flori's injury.

It is stated in defendant's brief, in the present case, that there is no logical distinction between the language "caused by equipment", etc., in the Hartford policy and the language "by reason of the existence of the well", etc., in the policy involved in the Dolph case, and we agree.

Quality Dairy Co. v. Ft. Dearborn Casualty Underwriters (Mo. App.), 16 S. W. (2d) 613, was an action on an indemnity policy. The policy insured "against any loss by reason of the liability imposed by law upon the assured for damage on account of bodily injuries, whether fatal or non-fatal, accidentally suffered, or alleged to have been suffered, while this policy is in force, by any person, or persons, by the reason of ownership, maintenance, or use of any of the auto-

mobiles enumerated and described'' therein. The Dairy Company's truck covered by the policy, was being driven by its employee with a two horse wagon attached. The wagon became detached, collided with an automobile and injured one Koerner, who sued the Dairy Company and recovered, and the Dairy Company brought suit on the policy. The insurer contended that its policy did not cover the injury for the reason that the accident ''was not caused by the truck by reason of its ownership, maintenance or use as set out in the policy.'' The insurer reasoned this way: ''The cause of the wagon's becoming detached is not shown, and may have been for many reasons other than the use of the truck; that if it became detached for any reason other than the ownership, maintenance, or use of the truck, the claim was not within the terms of the policy.'' It was held, however, that the policy covered Koerner's injury.

In Owens et al. v. Ocean Accident & Guaranty Corp., 194 Ark. 817, 109 S. W. (2d) 928, it was held [headnote—109 S. W. (2d)] that ''injuries sustained by woman who was carelessly permitted to fall from ambulance stretcher or cot to pavement, while she was being carried from her home to ambulance, were within coverage of automobile liability policy covering injuries caused by ownership, maintenance, or use of undertakers' ambulance.''

In Mullen v. Hartford Accident & Indemnity Co., 287 Mass. 262, 191 N. E. 394, the policy insured ''against loss by reason of the liability to pay damages to others for bodily injuries . . . sustained during the term of this policy by any person . . . arising out of the ownership, operation, maintenance, control or use (of the insured truck) upon the ways of said Commonwealth.'' The insured permitted oil to leak upon the street from the crank case of the insured truck. A pedestrian slipped in this oil, fell and was injured. It was held that the policy covered the injury. Similar cases are Maryland Cas. Co. v. Tighe (9th Cir.), 115 Fed. (2d) 297; Merchants Company et al. v. Hartford Accident & Indemnity Co. et al., 187 Miss. 301, 188 So. 571; Roche v. United States Fidelity & Guaranty Co., 273 N. Y. 473, 6 N. E. (2d) 410; Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 261 Pac. 880.

In Fitzgerald v. Milwaukee Automobile Ins. Co. et al., 226 Wis. 520, 277 N. W. 183, the facts were these: May 26, 1932, the Milwaukee Company issued an automobile indemnity policy to one Westphal, insuring him '' 'against direct loss and expense arising or resulting from claims upon the assured for damages by reason of the ownership, maintenance, manipulation or use of any automobile enumerated and described . . . if such claims are made on account of (A) bodily injuries or death accidentally suffered or alleged to have been suffered by any person or persons (excluding any employee of the assured while engaged within the scope of his employment) as the result of an accident occurring while this policy is in force; and also against such loss or expense on account of such injuries or death so suffered,

if caused by carrying goods on such automobile, or by the actual loading or unloading of same;

" '20. If the assured carries the policy of another insurer against any loss or expense covered by Section II hereof . . . and if such other insurance . . . includes directly or indirectly insurance against loss or expense on account of bodily injuries or death caused by or arising out of the loading or unloading of any automobile insured hereunder . . . then this policy shall, during the period covered by such other insurance, entirely cease to cover against any and all such loss or expense.' "

June 11, 1932, the Hardware Mutual Casualty Company issued to Westphal a liability policy which insured him "against loss from liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons not employed by the assured, while at or about the work of the assured and during the prosecution of said work at the place or places mentioned in Item IV (a) of the statements hereof (and elsewhere if caused by employees of the assured engaged as such in said operations and at said places, but who are required, in the discharge of their duties to be from time to time at other places). . . ."

July 8, 1932, Fitzgerald was injured during the process of unloading one of Westphal's trucks. He sued Westphal and recovered a judgment. Fitzgerald, Westphal, and the two insurance companies entered into an agreement about the payment of the judgment if it was affirmed or modified, etc. The judgment was affirmed, Fitzgerald v. ▮▮▮▮ Westphal, 219 Wis. 665, 264 N. W. 251, and Fitzgerald brought suit against the Milwaukee Company "to recover a balance" of the judgment. The Milwaukee Company invoked as its defense the *other insurance* provision in its policy. Fitzgerald did not contend that the Hardware Mutual policy did not cover his injury, but contended that the Milwaukee Company was estopped to invoke such defense, and that defense was denied. On the subject of other insurance the court said [277 N. W. l. c. 186]:

"The insured did secure additional insurance. He procured a policy described as 'general liability' from the Hardware Mutual. It seems to be conceded that this latter policy protected the insured to the extent of $5,000 against liability arising out of the negligence of his employees in delivering the wood at the place where the injury to the plaintiff occurred. This, under the terms of the agreement with the Milwaukee Automobile Insurance Company, constituted the additional or other insurance, and relieved the insurer from the loading and unloading coverage. It cannot be maintained that the words 'other insurance' were intended to refer only to additional automobile liability policies. It appears from the policy of the Hardware Mutual that it undertook to protect the insured against liability resulting from an injury accidentally suffered by any person

either on the premises of the insured or elsewhere, if caused by the employees of the insured engaged as such in the line of their employment.''

If liability under the Hartford policy in the present case was limited to injuries caused by *defects* in the rented equipment, why should there be reference to equipment ''delivered by the assured or the contractor'', and the provision that the coverage applied ''from the time the equipment shall leave the premises of the assured until it shall be returned'', and why the exception that the coverage did not include injuries ''caused by any person employed by the assured contrary to law or under fourteen (14) years of age.'' Also, it is not without significance that the Hartford Company did not deny liability on the ground that its policy did not *cover* the injury to Walsh, but on the ground that the policy had expired.

The judgment should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.,* absent.