NEW YORK CENTRAL RAILROAD COMPANY, a Corporation, Appellant, v. CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY, a Corporation, Respondent, No. 41652—231 S. W. (2d) 174.

Division Two, June 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, July 10, 1950.

*Wilton D. Chapman* for appellant.

*Jones, Hocker, Gladney & Grand* and *Lon Hocker* for respondent.

888

BOHLING, C.—The New York Central Railroad Company, a corporation, sued the Chicago and Eastern Illinois Railway Company, a corporation, under the indemnity provisions of a contract between said corporations for reimbursement of $42,924.45 paid on account of two death claims resulting from a collision between one of defendant's trains and one of plaintiff's motorcars, which collision caused the deaths of four of plaintiff's employees. We designate the parties as plaintiff and defendant. Defendant's answer denied liability and, by way of counterclaim, asked reimbursement from plaintiff of $28,682.17 paid by defendant on account of the other two death claims. The jury returned a directed verdict in favor of defendant on plaintiff's claim and a verdict in favor of defendant and against plaintiff for $28,682.17 on defendant's counterclaim. Judgment accordingly. Plaintiff appealed. The main controversy is whether said indemnifying provisions (hereinafter set out) indemnify plaintiff against its own negligence. Other issues, particularly the counterclaim, call for some detail of the facts.

Defendant, as lessee, operates trains over plaintiff's double track railroad between Pana and East St. Louis, Illinois, under a 999-year lease bearing date of November 1, 1902. The trackage involved is between Livingston and Lennox, Illinois, which are about 20 miles apart with a passing track known as Gard about midway between the two towns. Lessee's trains over said leased tracks are operated by its employees, "subject, however, to the rules and directions of the" lessor, with the lessor's trains having the right-of-way over lessee's trains of the same class.

About 5:00 a. m. October 2, 1945, Helmer J. Frandson, telegraph operator at Livingston, received the regular "lineup" from the Dispatcher's office at Mattoon. Frandson was eighteen years old. A "lineup" is a list of movements scheduled over the track for the day. William D. Andrews, one of plaintiff's Section Foremen, together with other Section Foremen of plaintiff, had occasion to proceed south-

west of Livingston on said date, and asked Frandson for a lineup. Frandson handed Andrews the lineup at 5:31 a. m., and, as it disclosed that the eastbound track was clear of traffic, they started west over the eastbound track. The other Section Foremen were Stephen Papa, Jr., Wilfred V. Row, and Calvin R. Shaul. Shaul, we understand, lived in the vicinity of Gard and met the others there. There was a "pole telephone" at Gard from which one could reach Livingston and Lennox. Shaul always telephoned in to check the situation when Andrews reached Gard, and if he did not, Andrews would telephone.

Soon after Andrews left Frandson, Amos Rogers, the dispatcher, telephoned Frandson and asked if he had given out any lineups, stating he desired to cross defendant's westbound train No. 523 over to the eastbound track so that plaintiff's westbound train No. 407 (second section), a troop train, might pass. Frandson informed the dispatcher he had given Andrews a lineup, and also stated that Shaul always called in from Gard. The dispatcher then gave the orders to have defendant's train No. 523 cross over to the eastbound track at Livingston and proceed against the current of traffic to Lennox and for the operator at Lennox to hold all eastbound trains. We understand the automatic block system does not apply when trains run against the current of traffic. The conductor and engineer of defendant's train No. 523 received train order No. 109 at Livingston, reading: "No. 523, Engine 1003, has right over opposing trains on eastward track Livingston to Lennox. Signed H. F. M." It shows: "Made complete 5:53. Frandson." They also received this message: "I have one order for your train, order No. 109. This form is authority to pass switch signal for eastward track. Block clear. H. J. Frandson, Operator."

There was no telephone call from Gard to plaintiff's operator at Livingston. Plaintiff's said train No. 407, on the westbound track, caught up with and passed defendant's train No. 523 on the eastbound track.

Mrs. Emma Johnson saw the accident, which we understand happened less than a mile west of Gard. She testified she saw the motorcar stop and the men get off and stand at the side of the track. The motor was not shut off. She looked to the east, saw a train approaching and heard its whistle. It went by. The men returned to the motorcar and had just gotten in when witness saw a second train, defendant's No. 523, approaching about 100 feet east of the motorcar, and the motorcar was struck before anyone escaped. All four men were killed instantly.

Defendant's engineer, Clyde K. Maxfield, testified he received the train order to cross over; that the block was clear, and that he was given no notice whatever of any other traffic on the eastbound track in any direction; that the speed restriction was 80 miles an hour; that

plaintiff's train, which had a steam locomotive, passed; that he could not see ahead on account of the fog, and the steam and smoke from plaintiff's engine, and slackened the speed of his train; that when he emerged from the smoke the motorcar was about 75 feet ahead of him; that he set the brakes but was unable to stop before striking the motorcar; and that his train traveled about three-fourths of a mile before stopping.

Plaintiff had evidence to the effect that the view of defendant's engineer was not obstructed, and that he should have seen and discovered the presence of the motorcar in time to have stopped the train.

In November, 1945, defendant paid approximately equal amounts on account of the deaths of Calvin R. Shaul and Wilfred V. Row, a total of $27,600, and incurred expenses of $1,082.17 in connection therewith, a grand total of $28,682.17.

Without stating the details at this point, plaintiff paid in or prior to January, 1947, a total of $32,868.45 on the claim for the death of William D. Andrews, including a judgment for $31,956.87; and also paid in or prior to May, 1947, a total of $10,056 on account of the death of Stephen Papa, Jr.

The litigants say the first clause of paragraph 16 of the contract of November 1, 1902, rules the instant case. Said clause reads:

"That each of the parties hereto shall be responsible for any damages or injury done by its employees to any other party hereto or to third persons and shall save the other parties hereto harmless from all loss or expense growing out of such damage or injury; * * * "

Other covenants of said paragraph relate to damage to the trains of the contracting parties; damage to said parties or to third persons by the joint negligence of employees or the negligence of joint employees of the parties; reimbursement of damages paid a third person by a contracting party not at fault for injuries caused by trains, engines, et cetera of the party at fault; and instances wherein the cause of the damage to third persons is unknown.

Plaintiff says the contract "purposely refrained from the use of 'negligence' and 'negligently'" because it "was not an attempt merely to restate the legal rights of the parties as they were at common law," but was drafted "to avoid disputes between the parties, setting out the terms, provisions and conditions under which" the plaintiff would permit the defendant to use plaintiff's rails and facilities; that is, that since defendant's train struck the motorcar defendant is answerable to plaintiff for outlays on account of any deaths resulting from the collision.

Defendant says it is not necessarily a question of "who hit whom," the "how" of the accident; but a question of "why" the train struck the motorcar, the "how" being important only to the extent it reveals the "why" thereof.

We disagree with plaintiff's position that the clause imposed liability on defendant merely because its train struck the motorcar as the price or condition under which plaintiff would permit the use of its facilities by defendant. The instant situation is not like those frequently giving rise to indemnity provisions and encountered in cases stressed by plaintiff where as a condition to the grant of some privilege the indemnity provisions are unilateral, in favor of the grantor only, and are considered to indemnify the grantor notwithstanding his negligence contributed to the damage or injury. Cacey v. Virginia Ry. Co., 85 F. 2d 976, 978 [2]; Payne v. National ▮▮ Transit Co., 300 F. 411, 412 [1, 3]; Checkley v. Illinois Cent. Rd. Co., 257 Ill. 491, 100 N. E. 942, 944 [4]. The instant clause indemnifies defendant as much as it indemnifies plaintiff—"each of the parties hereto shall be responsible for any damages done by its employees" embraces defendant as much as it embraces plaintiff. The words employed demonstrate that no party to the contract was executing a liability insurance policy protecting the other contracting parties or subjecting itself to liability when without fault, but that the covenants were mutually arrived at for the mutual protection of the contracting parties against the wrongful acts of other contracting parties. Furthermore, we find the words "negligence," "at fault," "carelessness," "misconduct," and other like expressions occurring in said paragraph 16.

In Armstrong v. Chicago & W. I. Rd. Co. (1932), 350 Ill. 426, 183 N. E. 478, 480 [1], it is said: "The principle is thoroughly established that where an injury results from the negligent or unlawful operation of a railroad, whether by the owner or by another whom the owner authorizes or permits to use its tracks, both railroad companies are liable to respond in damages to the party injured. [Citing cases.]" This was also the law in Illinois on the date of the contract, November 1, 1902. For instance: Lessor railroads were held liable for the negligent acts of their lessee railroads. Pennsylvania Co. v. Ellett (1890), 132 Ill. 654, 24 N. E. 559, 560, citing cases; Ohio and Miss. Rd. Co. v. Dunbar (1858), 20 Ill. 623, 627. And, a lessee railroad was held liable when it struck and killed a horse upon the track of its lessor railroad, the latter having breached its duty to fence the railroad, and "by reason of no fencing the said horse was killed." The court said: "*Pro hac vice,* they [the lessees] must be deemed the owners, and they controlled the powers that did the injury." Illinois Central Rd. Co. v. Kanouse (1866), 39 Ill. 272, 278; Toledo, P. & W. Ry. Co. v. Rumbold (1866), 40 Ill. 143, 145.

We think the contracting parties, including plaintiff, did not intend by the clause under review to subject themselves to liability when not negligent or liable at law for damage or injury to other contracting parties or third persons; and that the broad provisions of said clause operate, in part, to meet situations not otherwise covered

by the contract arising under the laws of Illinois imposing liability on both lessor and lessee railroads for damages to third persons for the protection of contracting parties not guilty of negligence proximately causing the damage or injury.

[2] Notwithstanding the directed verdict upon plaintiff's claim, we have a verdict for defendant upon the merits on defendant's counterclaim. Under the instructions of the court the jury found plaintiff guilty of negligence causing the deaths of the four men and exonerated the defendant. As a result, our conclusion stands fortified in this: 1st. A contract of indemnity is not to be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, "where such intention is not expressed in unequivocal terms." Missouri Dist. Tel. Co. v. Southwestern B. Tel. Co., 338 Mo. 692, 93 S. W. 2d 19, 28 [18]; Terminal Rd. Ass'n v. Ralston-Purina Co., 352 Mo. 1013, 180 S. W. 2d 693, 697; Central Surety & Ins. Corp. v. Hinton, 233 Mo. App. 1218, 130 S. W. 2d 235, 238; Annotation, 175 A. L. R. 29, §§ 17-20; 27 Am. Jur. 464, § 15; 42 C. J. S. 580, § 12, a, Negligence. 2nd. There is greater reason for the strict construction of a contract of indemnity where the sole negligence involved is established to be that of the indemnitee, as here, and especially so under covenants for mutual indemnity. Annotation, 175 A. L. R. 32, § 18.

It stands adjudged by the verdict on the counterclaim that as between plaintiff and defendant plaintiff was the wrongdoer and defendant was not a wrongdoer to plaintiff. Defendant was obeying plaintiff's order to proceed over the eastbound track but plaintiff negligently failed to inform defendant of the presence of the motorcar thereon. The mere fact that defendant's train struck the motorcar does not establish that defendant was necessarily negligent nor is it sufficient to establish that ▆▆▆ plaintiff was not negligent. We think the celebrated "squib" case (Scott v. Shepherd, 2 W. Bl. 892, 96 Eng. Rep. 525, 1 Smith, Leading Cases 797) illustrative. Plaintiff is not exonerated because an intervening act of defendant, without fault on the part of defendant, contributed to the final result. The jury considered defendant not negligent and the collision an inevitable accident so far as defendant was concerned. Plaintiff may not successfully contend the resulting damage was "done by" defendant's employees. Consult Walters v. Rao El. Eq. Co., 289 N. Y. 57, 43 N. E. 2d 810, 143 A. L. R. 308, 311 [1]; Annotation, 175 A. L. R. 36, § 19.

▆▆ Plaintiff, directing attention to the fact defendant paid the claims for the deaths of Row and Shaul and allegedly "agreed to defend the Andrews case," also says defendant construed the contract in harmony with plaintiff's construction or that defendant's payments on account of the deaths of Row and Shaul were voluntarily made by a stranger and, hence, plaintiff is entitled to recover against defendant

and defendant may not recover on its counterclaim. 12 Am. Jur., 787, § 249; 17 C. J. S. 755, § 325; 40 Am. Jur. 727, § 23; 48 C. J. 738, § 284.

The Administratrix of the estate of William D. Andrews sued the plaintiff, without joining the defendant, in December, 1945, for the death of said Andrews. Plaintiff notified defendant thereof on December 12, 1945, requesting defendant to defend said suit. In January, 1946, defendant's attorneys appeared and obtained an extension of time for defendant in the Andrews case to plead, and on January 22, 1946, notified plaintiff it had decided it was not obligated under the contract to indemnify plaintiff for any damages paid on account of the collision of October 2, 1945, and had its attorneys withdraw from the defense of said suit. The record does not disclose that defendant "agreed to defend the Andrews case."

█ Defendant was liable under the Illinois law for the negligence of the plaintiff in causing the collision of October 2, 1945, and the deaths of the four men. Armstrong v. Chicago & W. I. Rd: Co.; Illinois Central Rd. Co. v. Kanouse; Toledo, P. & W. Ry. Co. v. Rumbold, supra. In such circumstances defendant had a right to discharge its liability and in doing so was not a stranger making voluntary payments. There is no contention that any expenditure on account of the death of any of the men was excessive or was not made in good faith.

The contentions are overruled.

█ It follows that the court did not commit error in refusing plaintiff's motion for a directed verdict or plaintiff's instructions E, F, G, and H, each of which proceeded on plaintiff's trial theory that proof of defendant's train striking the motorcar and the resulting deaths of the men, facts not disputed by defendant, entitled plaintiff to a judgment, and each of which did not predicate a plaintiff's verdict on negligence of the defendant. Likewise, plaintiff's reliance on this appeal on said trial theory fails to establish error on said issues. And, since plaintiff did not plead or submit any ground warranting a recovery against defendant, we cannot say that the court erred in directing a verdict for defendant on plaintiff's claim. The finding of the jury on the merits of defendant's counterclaim that plaintiff was negligent in causing the deaths of the four men discloses that said alleged errors, if errors, were harmless.

█ Instruction No. 3 predicated a recovery on defendant's counterclaim upon findings, among others, that plaintiff routed defendant's train over the eastbound track at a time when plaintiff was permitting its motorcar to operate thereover without notifying the operators of defendant's train or the occupants of the motorcar of such movements; that such acts by plaintiff constituted negligence proximately causing the collision between said train and motorcar and the resulting damages; and that such damages were "done by the employees of the

plaintiff'' and "were not done, by the employees of the'' defendant. Defendant was not entitled to a verdict thereunder unless the jury found plaintiff guilty of ▮▮▮▮ negligence causing the deaths, and unless they further found that the deaths were not caused by the negligence of defendant's employees. Plaintiff asked the usual burden of proof instruction respecting the establishment of its negligence as to defendant's counterclaim; and argued that defendant's negligence caused the deaths.

Plaintiff's attack against instruction No. 3 on the ground there was no issue of negligence in the case is without merit for reasons hereinbefore stated.

Plaintiff also attacks the instruction on the ground the dispatcher at Mattoon and the station operator at Livingston were the joint employees of plaintiff and defendant under the contract and, hence, defendant's employees were negligent, defeating a recovery on the counterclaim. This contention may not be sustained, because: 1st. Plaintiff proceeded throughout the trial on the theory these employees were its employees as did defendant and the court. Plaintiff's reply presented no issue that these employees were joint employees of plaintiff and defendant. In plaintiff's opening statement, in the progress of the trial, and in plaintiff's argument to the jury, these employees were considered plaintiff's employees. Plaintiff may not first inject the issue upon appeal. 2nd. Plaintiff bases this contention on paragraph 15 of the contract. It states, so far as necessarily material, that plaintiff is not an insurer of the safe-condition "of its tracks, bridges, fences or other structures'' to be used by defendant; and that the employees of plaintiff "charged with the construction, operation, maintenance, repairs or renewals of said railroad property,'' until defendant gives notice of the bad condition of said property, shall be considered the joint employees of both parties. This does not embrace train dispatchers and station agents carrying out the orders of train dispatchers with respect to defendant's trains, as they are not then constructing, operating, maintaining, repairing, or renewing plaintiff's tracks, bridges, fences, or other structures.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.