**KANSAS CITY POWER & LIGHT COMPANY, a Corporation, Respondent,**

v.

**FEDERAL CONSTRUCTION CORPORA-TION, a Corporation, Appellant.**

No. 48576.

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1961.

Motion for Modification of Opinion and Order Denied Dec. 11, 1961.

742

Robert S. McKenzie, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for appellant.

Joseph J. Kelly, Jr., William H. Woodson, Donald W. Giffin, Spencer, Fane, Britt & Browne, Kansas City, for respondent.

EAGER, Presiding Judge.

Respondent Kansas City Power & Light Company sued appellant Federal Construction Corporation, its contractor on certain work, for indemnity under a written contract. Respondent had previously settled personal injury suits filed against it by two employees of the contractor. It recovered $25,083.82 in the trial court and this appeal followed. We shall refer to respondent as plaintiff and to appellant as defendant.

A "General Contract Proposal" dated August 27, 1954, had been executed by the parties, covering the construction of distribution and transmission lines by defend-

ant; thereafter, and subject to the general contract, a "Job Proposal" was executed and accepted on July 11, 1955, providing for the "Reconductoring" of a certain high voltage line between plaintiff's Hawthorne Plant and the junction of Highway 24 and Manchester Avenue in Jackson County. Specifically, this work consisted of replacing the magnetic suspension clamps with nonmagnetic clamps to procure greater efficiency; the clamps fixed the wires to the insulators. This line consisted of three wires suspended on nineteen sets of dual poles; the wires were suspended below crossarms on each set of poles and were clamped to the bottoms of rather long insulators extending downward from the crossarms to the wires. From a stipulation of facts filed, the following appears: when the work began plaintiff de-energized the line by disconnecting the three "jumper wires" or leads at a steel tower inside the plant area where the line was normally energized; at that time it connected these three jumper wires with lugs, screws and clamps to the legs of the tower structure, where they would receive no current. At the time of the injuries in question, on November 1, 1955, two of defendant's linemen, Bill Harber and Robert Spurlin, were working on the last of the pole structures, the one just outside the Hawthorne generating plant; this was on land owned by plaintiff. At that time they had pulled the center wire somewhat up and to the north with a block and tackle so that they could reach the clamp as they stood on the pole with their spikes, supported by their belts. The same procedure had been followed on all other eighteen structures. While they were thus changing the clamp, the end of the "jumper" (a short wire leading downward from the main wire to pick up the current from a "bus bar") on the center wire broke loose from its previously fixed position on the steel tower, swung free and downward, and twice contacted the energized "bus bar" as it swung. This sent the high voltage current for short periods through the wire on which the men were working, severely injuring them.

They were paid workmen's compensation benefits by defendant's insurer and their medical expenses were also paid by it. When plaintiff was sued by these men, it tendered the defense to defendant, but the latter declined to assume it. The amount which plaintiff should recover in the present action, if anything, was stipulated. The payments made by plaintiff in settlement of the suits included payments to defendant's workmen's compensation insurer as subrogee.

We are concerned only with the indemnity and insurance features of the contract between the parties. At the expense of brevity we must quote the indemnity provisions in full: "Responsibility for all risks shall be assumed by the Contractor, and he will be held liable for the safety of the work to be performed by him. He shall be held responsible and shall make good without delay any damage arising from accidents, negligence, or carelessness pertaining to the work and every part thereof, and for all materials, tools, appliances, and property of every description used in connection therewith. Every precaution will be used by the Contractor to protect the workmen and others about the premises and the public on the streets, highways, or rights-of-way, and he shall indemnify and save harmless the Company and its representatives, successors, and assigns from all suits or actions of every nature or description for, or on account of, damage or injuries received or sustained by any party or parties by or from the Contractor, his agents, or servants in the performance of the work." (From page 7 of the contract.)

"The Contractor shall indemnify, defend and save the Company harmless from all loss, cost, expense, damage, judgment or other obligations resulting from or arising out of the acts or omissions of the Contractor, or any sub-contractor, their respective servants, agents, and employees, resulting in injury to, or a claim of injury to, the person or property (1) of the Contractor's employees and (2) of all other persons.

The performance of this indemnification will be assured by the Contractor taking out, paying the premium on, and, at all times during the life of the Contract, keeping in force adequate policies of liability insurance with minimum coverage as follows:" (The foregoing is from page 8 of the contract; here followed a description of several types of insurance which will be referred to presently.)

"Responsibility of Contractor to Private Property Owners. In connection with construction of the distribution or transmission line, the Contractor shall, whenever practicable, use existing roads or lanes to travel upon privately-owned property, and shall, as far as reasonably possible, stay upon those parts of privately-owned land in which the Company will have acquired rights of entry or other rights. In those cases where the Contractor finds it necessary to enter upon, travel across, or otherwise use privately-owned land outside of the rights on such land acquired by the Company, the Contractor shall make all necessary arrangements with the landowners involved for such rights of entry and use of their property. The Contractor shall be responsible and liable to landowners and other claimants for, and shall hold and save harmless the Company from, any and all actual or alleged damages, injuries, costs, expenses, suits, causes of action or claims, whether relating to persons or property or both, arising out of or as a consequence of the construction of the distribution or transmission line. This shall include, without limiting the generality of the foregoing, any and all claimed damage to any of the following: standing or growing crops, fields, pastures, roads or other land because of ruts or holes created in the process of construction; tears, snags, or other damage to fences or gates; injury to existing buildings, walls, springs, or other improvements from blasting operations during construction; loss of or injury to livestock from any act connected with such construction; including losses caused by failure to replace or restore fences or failure to close gates; loss of or injury to personal property in place on land; inter-

ference with the normal flow of springs, wells or creeks or the normal drainage of surface water because of grading, digging, blasting, or other operations connected with the construction; injury to persons from blasting operations; interference (other than inductive interference) or damage to any telephone or telegraph line or cable, power line or cable or gas or oil pipe lines; or other acts connected with such construction." (From page 20 of the contract.)

The insurance so required was (omitting automobile coverage): "Workmen's Compensation; Public Liability, extending coverage to include the interests of Kansas City Power & Light Company; Property Damage, extending coverage to include the interests of Kansas City Power & Light Company; Contingent Public Liability, if Contractor employs any sub-contractors, extending coverage to include the interests of Kansas City Power & Light Company; Contingent Property Damage, if Contractor employs any sub-contractors, extending coverage to include the interests of Kansas City Power & Light Company; Contractual Liability; Contractual Property Damage." Stated limits of the various coverages were included.

The case was tried to the court without a jury upon the stipulation of facts and a supplemental stipulation. The latter was prompted by a suggestion of the court that it would like to examine the insurance policies. Copies of three policies were attached,—with many endorsements. We shall disregard one as it covers merely automobile liability. Of the other two, one was Michigan Mutual Liability Company's "Comprehensive General Liability" Policy No. 18–3171, issued to defendant; one of its primary coverages was "To pay * * all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person and caused by accident." Liability assumed under any contract was generally excluded, except as defined therein, but the policy bore an endorsement making it applicable to the "legal liability of others assumed by the named insured" under the Kansas City Power & Light Company construction contract; and, except with respect to the stated assumed liability, the policy expressly excluded liability for injury to any employee of the insured while engaged in its employment. There is no reference in that policy to "Extended Coverage" as such.

Policy No. 16–101363 of the same insurer was entitled "Workmen's Compensation and Employer's Liability Policy." In addition to the workmen's compensation coverage it provided coverage of insured for injury to any employee arising "out of and in the course of his employment," apparently to cover the liability in those instances where the Compensation Law might not be applicable. This policy made no reference to any assumed contract liability; in fact, the bodily injury coverage (as distinguished from the workmen's compensation coverage) expressly excluded obligations under the "Workmen's Compensation Law" and liability assumed by the insured under any contract. We may confine our primary consideration here to the "Comprehensive" Policy No. 18–3171. After the issuance of these policies plaintiff notified defendant that the insurance requirements had been met.

It seems to stand conceded that plaintiff was legally chargeable with negligence in permitting the jumper wire to break loose and become energized. In any event, we take that fact to be true. It is also conceded that defendant's employees were working on the center wire and had moved it somewhat when the casualty occurred; plaintiff says that·this constituted "acts" of the defendant. There is nothing in the stipulated facts to show that these acts of defendant's employees amounted to negligence or misconduct of any sort. Basically, the question here is whether or not the contract constituted an agreement to indemnify plaintiff against the results of its own negligence. And, as a corollary of this, the question is posed: did the requirement of and the procuring of insurance,

indicate a mutual intent to require defendant to assume liability for plaintiff's negligence and, as plaintiff says, for all major losses and claims resulting from the work? There are further incidental contentions which we shall not reach.

While the proposition has been discussed and controverted, at times, it seems clear now that in a private contract, where the parties stand on a substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence. List & Clark Construction Co. v. McGlone, Mo.App., 296 S.W.2d 910; Kansas City Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W.2d 692. But it has often been said that a contract of indemnity will not be construed so as to indemnify one against loss or damage resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms. Thomas v. Skelly Oil Co., Mo.App., 344 S.W.2d 320, 321; Missouri District Telegraph Co. v. Southwestern Bell Telephone Co., 338 Mo. 692, 93 S.W.2d 19, 26; North American Ry. Construction Co. v. Cincinnati Traction Co., C.C.A. 7, 172 F. 214, 216; United States v. Wallace, C.C.A. 9, 18 F.2d 20; Batson-Cook Co. v. Industrial Steel Erectors, C.C.A. 5, 257 F. 2d 410, 412; Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173, 10 Ann. Cas. 589; Central Surety & Insurance Corp. v. Hinton, 233 Mo.App. 1218, 130 S. W.2d 235, 238; New York Central R. Co. v. Chicago & E I R Co., 360 Mo. 885, 231 S.W.2d 174, 177; Thompson-Starrett Co., Inc. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35, and 175 A.L.R., note, pp. 29–32. And it has often been held that mere general, broad, and seemingly all-inclusive language in the indemnifying agreement is not sufficient to impose liability for the indemnitee's own negligence. Missouri District Telegraph Co., supra; Batson-Cook Co., Inc., supra; United States v. Wallace, supra. As stated in North American Ry. Construction Co. v. Cincinnati Traction Co., C.C.A. 7, 172 F. 214, at loc. cit. 216

(quoted in Missouri District Tel. Co. v. Southwestern Bell Tel. Co., supra, p. 28 of 93 S.W.2d): " 'Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified.' "

Coming now to a construction of the contract terms, we note, first, that there is certainly no specific agreement to indemnify plaintiff against its own negligent acts. In the light of the foregoing principles we examine further the language used. We find (p. 7): "Responsibility for all risks shall be assumed * * * and he will be held liable for the *safety* of the work to be performed *by him*." (All italics are ours.) While the sentence is very indefinite, we construe it as referring solely to risks created by the contractor's own acts. Further: "He shall * * * make good * * * any damage arising from accidents, negligence, or carelessness pertaining to *the work* * * * and for all materials, tools, * * *." At most, this can refer only to defendant's own acts, if indeed it is not meant merely to cover property damage. Then: "He shall indemnify * * * the Company * * * from all suits * * * for * * * damages or injuries received * * * by any party *by or from the Contractor, his agents,* * * * in the performance of the work." The latter sentence, as a sort of summary, amply reinforces the view that the whole paragraph speaks only of indemnity from injuries or loss occasioned by, and resulting because of, defendant's own acts.

In the provisions from page 8 we find: "shall indemnify * * * from all loss * * * *resulting from or arising out of the acts or omissions of the Contractor, or any subcontractor* * * resulting in injury to * * * the person or property (1) of the contractor's employees, and (2) of all other persons. The performance of *this indemnification will be assured* by the contractor taking out, * * * liability insurance * * *." Here there is a clear inference of a requirement of *fault* on the part of defendant, either by acts of commission or omission.

The provisions on page 20 of the contract appear under the heading—"Responsibility of Contractor to Private Property Owners." While not conclusive, this heading is somewhat indicative of the intent to be derived from the text which follows. The first paragraph refers to the *use* to be made of private property. Immediately following appears this: "The contractor *shall be * * * liable to land owners* and other claimants for and shall hold and save harmless the company from * * * damages, injuries, costs, expenses, suits, * * * relating to persons or property or both *arising out of or as a consequence of the construction* of the * * * line." Then follows the statement that this shall include damage to crops, fields, pastures, roads, fences, gates, springs, livestock, etc., but "without limiting the generality of the foregoing * * *." In this enumeration the only specific reference to injury to persons is that "from blasting operations." We cannot escape the conclusion that this portion of the contract was primarily intended to cover property damages to landowners, and that in toto it comprehends only the physical construction work on private land of third persons, defendant's liability to landowners (and their privies, agents, etc.) therefor, and *its indemnity of* plaintiff *for such liabilities* (i. e. to landowners) whether for personal injury or property damage. Incidental to this is the covenant against damage to any telephone

or power lines, etc., also owned by third persons. Certainly plaintiff here is not in the position of a third person landowner, nor were the injured persons here its agents or privies. These subsequent provisions should not be held to supplant the provisions already discussed from page 8, which specifically dealt with injuries to persons or property of (1) defendant's employees, and (2) all other persons.

From a consideration of the contract as a whole, omitting for the present the requirement of insurance, we find that it does not constitute an agreement to indemnify plaintiff against results of its own negligent acts. Plaintiff insists that the contract does constitute an agreement to indemnify against damage "arising out of the *acts*" of defendant, regardless of the question of its negligence, and that it was certainly acting when its workmen moved the center wire with a block and tackle. The answer to this contention is that there is nothing in the record to show, aside from speculation, that the action of defendant's employees caused the jumper wire to break loose from its moorings, or that their acts were *a cause*. In that situation, we cannot hold that the wholly unexpected energizing of the wire resulted from the acts of defendant's employees. That question might be one for expert opinion but we have been given no light on the subject. As already stated, there is nothing in this record to show that the action of defendant's employees was negligent and, on the contrary, it is stipulated that the same practice had been followed throughout the prior work. Plaintiff also suggests that defendant would be liable to indemnify it in case of defendant's negligence even without a contract, so that the agreements must have some further meaning. What we have said above eliminates this contention, but, even so, one of two joint tort-feasors in pari delicto cannot recover indemnity (as plaintiff seeks here) but only contribution. Busch & Latta Painting Co. v. Woermann Construction Co., 310 Mo. 419, 276 S.W.

614; McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W.2d 788.

On the construction of the contract, no case is cited which is in any way controlling. Plaintiff cites, among other cases: Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693; Avery v. American Automobile Insurance Co., 350 Mo. 395, 166 S.W.2d 471. In Ralston, the railroad built a spur track on Ralston's property for the loading and unloading of products; Ralston agreed that it would not maintain any obstruction within certain specified distances above or adjacent to the track, and it agreed to indemnify the railroad from all loss *"caused by obstructions being closer * * * than specified herein."* [352 Mo. 1013, 180 S.W.2d 694.] Ralston did maintain an obstruction closer to the tracks than specified and an employee of the railroad was killed in a switching movement; this was apparently due both to a defect in the coupling equipment and to the close proximity of the obstruction. The widow sued the railroad and it settled with her; it then sued Ralston for indemnity and recovered. The case is clearly distinguishable. There, Ralston positively agreed to indemnify against a *status,* the existence of a *physical thing,* which could be determined at any given moment by a measurement. The right to indemnity did not necessarily depend on negligence or the lack of negligence on the part of either party. The court recognized the general rule of strictness in construing indemnity contracts; it merely determined that the proximity of the building was a cause of the death. We note also that the factual situation and the ruling in Buckeye Cotton Oil Co. v. Louisville & N. R. Co., C.C.A. 6, 24 F.2d 347, are very similar to those just discussed. The case of Avery v. American Automobile Insurance Co., 350 Mo. 395, 166 S.W.2d 471, cited somewhat incidentally, involved a suit against a liability insurance company and a defense of "other insurance"; the facts and the decision, so far as we can

see, have no applicability here. While, as already stated, no cited case is controlling here, we have noted as somewhat analogous and as tending to support our view, the following: Missouri District Telegraph Co. v. Southwestern Bell Telephone Co., 338 Mo. 692, 93 S.W.2d 19; Thompson-Starrett Co., Inc. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35; Batson-Cook Co. v. Industrial Steel Erectors, C.C.A. 5, 257 F.2d 410, and 175 A.L.R., note, pp. 29–32.

Alternatively, plaintiff insists that the contract requirement of liability insurance shows a clear intent to place all risk of major loss and damage on defendant; in this it emphasizes the requirements of "extending coverage" and of "contractual liability" insurance. This, as. we understand it, is argued as indicative of intent independently of the specific coverage actually contained in the several policies. We note that plaintiff has apparently not seen fit to proceed against the insurer. Apropos of this contention, we examine again the provision regarding insurance. It appears on page 8 of the contract following the agreement to indemnify plaintiff from all loss, damage, etc., *"resulting from or arising out of the acts or omissions of the contractor or any subcontractor * * *."* The specific and only requirement of insurance (immediately following) is that *"The performance of this indemnification* will be assured by the Contractor taking out, * * *."* As we construe the agreement, the insurance was thus only required to secure the agreement to indemnify against acts or omissions of the *defendant or any subcontractor.* The parties have so agreed. That being true, the requirement of insurance cannot be considered as evidencing an intent to broaden generally the contract language, or to extend it to cover negligence of the plaintiff.

In presenting copies of the policies to the court with a supplemental stipulation and without reserving any objec-

tions, defendant waived their admissibility. However, the question of their effect is always an issue. Looking at the policies: the automobile policy is wholly immaterial; Policy No. 16–101363, providing Workmen's Compensation and Employers' Liability Coverage, specifically excludes any employer's liability assumed "under any contract or agreement," and also (under that coverage) any obligation for which the insured might be held liable under the Workmen's Compensation Law, as defendant most certainly was in these instances. That policy appears to be immaterial here. The remaining policy is the "Comprehensive General Liability Policy," No. 18–3171. It provided, generally, coverage of the insured against legal obligations for damages from bodily injury to any person and caused by accident. (We note parenthetically that these two employees never fixed any legal obligation upon defendant except for workmen's compensation benefits.) By its original terms this policy excluded liability assumed by the insured under any contract or agreement, except as defined therein, but by an endorsement its coverage was made applicable to the "legal liability of others assumed by the named insured" under the Kansas City Power & Light Company contract. We find no so-called "extended coverage" in either of the policies as that term is generally used. Extended coverage in the usual sense, as we understand it, merely serves to protect an additional person or persons if it is sought to hold him or them liable by reason of any occurrence initially and originally insured against; in other words, it extends the scope of the persons covered, but does not extend the coverage. 45 C.J.S. Insurance § 829(a), p. 895; Thompson-Starrett Co. v. American Mutual Liability Insurance Co., 276 N.Y. 266, 11 N.E.2d 905; of course, some omnibus clauses extending the definition of the "insured" may extend the coverage to that extent. Rainwater v. Wallace, 351 Mo. 1044, 174 S.W.2d 835. If counsel mean to say that the mere requirement of Public Liability Insurance "extending coverage" to plaintiff does, in and of itself, constitute a requirement of indemnity under our circumstances, the answer is that such a policy only covers, initially, liabilities of the original insured as established *by law* and, except for workmen's compensation, there was no such liability here. Indeed, this "Comprehensive" policy, as seems customary, excluded (except for assumed liability) injuries to defendant's employees. An *extension* of that coverage could not conceivably help plaintiff here. We are therefore remanded solely to a construction of the provision for assumption of the contract liability.

■ What we are specifically concerned with here is the phrase,—"legal liability of others assumed by the named insured" under this particular contract. It is perfectly obvious to us that the legal effect of this provision is found very simply by a construction of the original contract terms, and by determining whether or not defendant therein agreed (or assumed) to indemnify plaintiff against its own negligence. We have already held that it did not. The mere act of insuring some "assumed liability" cannot extend or broaden the expressed assumptions. The language of plaintiff's counsel in the conclusion of their brief, that defendant "was required to insure the indemnity provisions," only corroborates our interpretation that the requirement and issuance of insurance could not and did not broaden the contract. The case cannot be decided upon any supposed "intent" evidenced merely by the insurance requirement, when the full contract language is before us for construction, and when the policy of insurance (approved by plaintiff) clearly expresses its coverage.

None of the cases cited by plaintiff are sufficiently close in fact or law to be controlling or even strongly persuasive. In both Monsanto Chemical Co. v. American Bitumuls Co., Mo., 249 S.W.2d 428, and Kansas City Stock Yards Co. v. A. Reich

& Sons, Mo., 250 S.W.2d 692, one of the parties was required to carry insurance on property in which both were interested, presumably with contract adjustments for the cost of the premiums. It was merely held in substance that the insurance was carried for the mutual benefit of the parties and that, pro tanto, the collection of that insurance by the plaintiff owner, after loss, relieved the party in possession of the property (defendant) from the results of its negligence in that it constituted a satisfaction of the claim. The cited case of Cerny-Pickas & Co. et al. v. C. J. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100, adds nothing to the result of the cases just discussed. See also to the same general effect Newport News Shipbuilding & Dry Dock Co. v. United States, C.C.A. 4, 34 F.2d 100, and Buckey v. Indianhead Truck Line, Inc., 234 Minn. 379, 48 N.W.2d 534, which are not cited. The subject matter of the insurance in all those cases was specific property. In our case we are concerned with the liability assumed under a contract, and we go right back to the contract to determine what was assumed. The following cases may be noted (although the factual situations differ from ours) as indicating generally that a requirement of liability insurance in a contract does not, per se, constitute an indemnifying agreement or broaden an indemnity already included. Finkelstein v. Majestic Realty Corp. et al., 198 Wisc. 527, 224 N.W. 743; Sinclair Prairie Oil Co. v. Thornley et al., C.C.A. 10, 127 F.2d 128; Westinghouse Electric Elevator Co. v. LaSalle Monroe Bldg. Corp., 395 Ill. 429, 70 N.E.2d 604.

We do not reach certain other points briefed by the parties. We conclude that the judgment in favor of plaintiff was "clearly erroneous" (Section 510.310 RS Mo 1959, V.A.M.S.) and it is reversed, with directions to the trial court to enter judgment for the defendant. It is so ordered.

All concur.